IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:09-CV-211-HEH |
| BOYD CORPORATION, et al. | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Denying Plaintiff's Motion for Summary Judgment and Granting Plaintiff's Request for Declaratory Judgment)

This case involves insurance coverage under commercial liability policies issued by Plaintiff. It is presently before the Court on a Motion for Summary Judgment filed by Plaintiff Nationwide Mutual Insurance Company ("Nationwide") on October 7, 2009. The parties have filed memoranda supporting their respective positions.

By agreement of counsel, the Court heard oral argument and all evidence relating to the merits of the claims on January 12, 2010, in lieu of a separate bench trial. This opinion addresses both Plaintiff's Motion for Summary Judgment and a decision on the merits as to the request for Declaratory Judgment.

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied. Further, Plaintiff's request for a Declaratory Judgment that it has no duty to defend or indemnify Defendant Boyd Corporation in the lawsuit presently pending in the Circuit Court of Chesterfield County is granted.

## I.

The underlying dispute concerns coverage for alleged damages caused to adjacent property by land development in Chesterfield County, Virginia, known as Ramblewood Forest. Boyd Corporation ("Boyd"), a builder and land developer, developed approximately 100 acres in Chesterfield County, Virginia owned by Defendant Ramblewood Forest, LLC ("Ramblewood Forest"). Defendant Rochedale Hundred Community Association, Inc. ("Rochedale Hundred") is a community association organized in part to own and maintain subdivision common areas, and their appurtenances in residential subdivisions developed by Boyd, including Ramblewood Forest. Ronald and Joyce Luck ("the Lucks") are owners of property adjacent to the property developed by Boyd. Plaintiff Nationwide issued Commercial General Liability insurance policies and Commercial Umbrella Liability policies to Defendant Boyd.

In 2003, the Lucks began expressing concern with the impact of the development on a three-acre recreational pond and bordering wetlands on their property, and, as a protective measure, requested that Boyd place a turbidity curtain across the upper end of the pond. Ex. 3 to Summ. J. Mot. In granting tentative approval for the development, Chesterfield County required Boyd to take steps to protect the Lucks' pond from the effects of water runoff. Ex. 4 to Summ. J. Mot. As the development proceeded, Boyd's contractors installed the turbidity curtain, but the effects of the water runoff continued. On June 19, 2006 and September 18, 2006, a Chesterfield County inspector noted that a

site visit revealed that the turbidity curtain was improperly installed and required repair. Exs. 7-9 to Summ. J. Mot. On September 28, 2006, Boyd stated in a letter to Chesterfield County that it would install a new curtain, among other steps, to protect the pond. Ex. 10 to Summ. J. Mot.

The Lucks' concern with the effects of the development on their property continued through 2007. An attorney for the Lucks and representatives from Boyd met in mid-November to discuss remedial measures requested by the Lucks. This meeting was memorialized in a letter from the Lucks' attorney to Boyd dated November 20, 2007. Ex. 18 to Summ. J. Mot. This letter requested that Boyd undertake six specific measures to prevent further impact on the pond and to restore the pond to its previous condition but made no mention of a potential lawsuit. *Id.*

On December 23, 2008, an attorney for the Lucks again wrote Boyd stating that "[w]e have reached the end of the road in our efforts to amicably resolve this situation." Ex. 19 to Summ. J. Mot. The author described the letter as a final "attempt [at] resolution short of litigation." *Id.* The letter threatened suit against Boyd ten days from its date and sought damages of $2,000,000 and alternatively requested mediation. *Id.* The letter did not request reparative action by Boyd like the November 2007 letter. Instead, this letter requested compensation for work to restore and protect the Lucks' pond. *Id.* To bolster their demand, a draft complaint was attached.

Boyd and the Lucks then attempted to resolve the dispute through mediation on

3

February 17, 2009 and March 6, 2009 but were unable to reach an acceptable resolution. Up to this point, Boyd had not informed its insurance carrier, Nationwide, of any of the communications or actions regarding damages to the Lucks' pond or the threatened lawsuit.

The Lucks filed a complaint ("Luck complaint") against Boyd, Ramblewood Forest, and Rochedale Hundred in Chesterfield County Circuit Court on March 13, 2009 for Trespass, Nuisance, and Negligence, claiming $2,000,000 in compensatory damages and $350,000 in punitive damages. Ex. 22 to Summ. J. Mot. Boyd notified Nationwide of the suit on March 23, 2009. Nationwide denied coverage on several grounds, stating that the claim violated the policies' exclusion for damage caused by "pollutants," that the alleged damage did not constitute an "occurrence" as defined in the policies, that the policies did not cover punitive damages claims, and that Boyd did not report the occurrence to Nationwide "as soon as practicable" as required in the policies. Ex. 23 to Summ. J. Mot.

Nationwide brought this suit against Boyd, Ramblewood Forest, Rochedale Hundred, and the Lucks seeking a declaratory judgment that Nationwide has no duty to defend or indemnify Boyd in the Chesterfield County lawsuit because the injuries alleged in the lawsuit did not constitute an "occurrence," the losses arose from pollutants, intentional acts, or expected harm that are not covered by the policies, and that Boyd breached the policies by failing to notify Nationwide of the claim as soon as possible as

required by the policies.

Plaintiff brings its Motion for Summary Judgment based on two of the three above claims. Plaintiff argues that summary judgment is appropriate based on the failure to notify as soon as possible and the pollution exclusion.

## II.

A district court has jurisdiction, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to determine the scope of insurance coverage concerning an ongoing dispute in state court. *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). Though exercise of this authority is discretionary, a declaratory judgment is appropriate when it would "serve a useful purpose in clarifying and settling the legal relations in issue, and . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). The action for declaratory judgment presented here would serve such a purpose.

Applying Virginia's "Eight Corners Rule," this Court will "compare the four corners of the insurance polic[ies] against the four corners of the underlying complaint to determine if any allegations may potentially be covered by the polic[ies]." *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (internal quotation omitted). The Court will determine whether "the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk

covered by the polic[ies]." *Penn-America Ins. Co.*, 368 F.3d at 413 (internal quotation omitted).

## III.

### A. Standard of Review

The Court may grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted).

### B. Discussion

#### 1. Pollution Exclusion

Nationwide argues that the allegations in the Lucks' complaint are excluded from

policy coverage by the pollution exclusion contained in the policies. The policies exclude coverage for property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." The policies define "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

Boyd counters that the Luck complaint alleges damages from, among other things, excess water flow and stormwater runoff, which it argues do not qualify as "pollutants" under the policies. Boyd further argues that sediments as complained of in the Luck complaint do not qualify as "contaminants" under the policies and that the Lucks allege that the stormwater originated somewhere other than the Boyd property, making the pollution exclusion inapplicable.

The Court is persuaded by the reasoning set forth in *State Auto Prop. & Cas. Ins. Co. v. Gorsuch*, 323 F. Supp. 2d 746 (W.D. Va. 2004). In *Gorsuch*, the court was faced with similar allegations of damage from flooding and identical policy pollution exclusion language. The court concluded that "the unambiguous wording of the exclusion does not define water as a pollutant . . . ." *Id.* at 753. After an extensive review of the lexicology of the policy terms and the applicable cases, the court determined that "a reasonable person would not classify flood waters alone as pollutants, and the pollution exclusion is inapplicable as a matter of law to the facts at hand." *Id.* at 755. The Court finds that the

same analysis applies in the instant case.[1]

Nationwide argues that the Luck complaint alleges damages from pollutants and polluted water that fall within the policies' pollution exclusion. While the Luck complaint contains several allegations of damage from "polluted stormwater," there are also allegations in the complaint of damage from "water." Luck Compl. ¶¶ 78, 80. The Court finds that the Luck complaint contains allegations of damage attributable to excess water flow and stormwater runoff, which cannot be considered "pollutants" under the policy exclusion. After comparing the Luck complaint with Boyd's insurance policies regarding the pollution exclusion, the Court finds that the Luck complaint contains allegations of damages that, if proven, would be covered in Boyd's insurance policies.

Considering the facts in the light most favorable to the non-moving party, the Court finds that Plaintiff Nationwide is not entitled to a judgment as a matter of law with regards to the pollution exclusion.

## 2. Notice

Nationwide also argues that Boyd breached the policies' terms by failing to notify Nationwide of the claim according to the terms of the policies. The applicable policy language states:

---

[1] Plaintiff argues that the result in this case should follow *Pennsylvania National Mutual Casualty Insurance Co v. Triangle Paving*, 973 F. Supp. 560 (E.D.N.C. 1996). This decision was based significantly on the North Carolina statutory definition of "sediment" and the statute's legislative history. *See id.* at 563-66. No such statute governs this case, and the Court finds this case inapposite to the facts at hand.

> a. [Insured] must see to it that [Nationwide] is notified as soon as practicable of an "occurrence" or an offense which may result in a claim. [. . .]
> b. If a claim is made or "suit" is brought against any insured, [insured] must:
>> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>> (2) Notify [Nationwide] as soon as practicable.
>
> [Insured] must see to it that we receive written notice of the claim or "suit" as soon as practicable.
> c. [Insured] and any other involved insured must:
>> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; [. . .]

For purposes of determining whether summary judgment is appropriate, the Court must initially determine if the question of whether notice was given as soon as practicable is a matter of law or fact. "The determination of whether notice was given . . . as soon as practicable is usually a question for the [fact-finder]." *Mason & Dixon Lines, Inc. v. U. S. Cas. Co.*, 199 Va. 221, 225, 98 S.E.2d 702, 705 (1957). In some circumstances, however, the delay between the occurrence and the notice is sufficiently unreasonable to violate the policy's notice provision as a matter of law. *See id.*; *see also State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 504, 423 S.E.2d 188, 192 (1992) (two-year delay unreasonable as a matter of law); *Dan River, Inc. v. Commercial Union Ins. Co.*, 227 Va. 485, 317 S.E.2d 485 (1984) (seven-year delay unreasonable as a matter of law).

Nationwide argues that Boyd incurred an obligation to notify it of the details of the dispute with the Lucks immediately following November 20, 2007, the date that counsel for the Lucks wrote Boyd requesting certain actions to restore the pond to its original condition and prevent future damage. Boyd does not state specifically when in

its view notice became required. Boyd does appear to concede that its duty to notify Plaintiff was triggered by the December 23, 2008 letter from the Lucks' attorney threatening suit for $2,000,000. Resp. to Summ. J. Mot. at 24 ("It was not until Christmas Eve 2008 that Boyd ever received any notice that the Lucks were planning to seek damages against Boyd.").

The duty to notify an insurer arises when an incident occurs "which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy." *Walton*, 244 Va. at 504, 423 S.E.2d at 192. The case at hand is not of the common variety dealing with an "occurrence" such as a fire or a automobile collision where the date of the occurrence is clear. In this case, the events that led to the eventual claim for damages took place over almost six years. Plaintiff argues that Boyd was objectively aware of a possible suit as of the November 23, 2007 letter to Boyd from counsel for the Lucks requesting several actions. Though this letter does not mention litigation, a strong inference could be drawn that the letter put Boyd on notice of a possible suit and consequently created a duty to notify the insurer. There is no doubt, however, that a duty to notify existed by December 23, 2008.

Subtleties aside, no communication prior to December 23, 2008, contained a specific demand for remuneration or threat of litigation. All requests up to this point were for reparative or preventative measures. There was no indication that Boyd's

10

insurance policies would be implicated so long as Boyd took these steps. The posture of the matter changed significantly with the December 23 letter. As of the receipt of this letter, Boyd was clearly aware that a lawsuit seeking monetary damages was contemplated.

Boyd argues that the December 2008 letter is not significant because the draft complaint was different from the complaint actually filed in Chesterfield. Irrespective of details, the question is whether the December 23 letter objectively put Boyd on notice of a *possible* suit. *See Walton*, 244 Va. at 504, 423 S.E.2d at 192. It is also important to emphasize that the criteria under *Walton* is not an event that portends of a *definite* suit or a *probable* suit. *Walton* requires only that an event take place that is sufficiently serious to give a reasonable person a belief a claim for damages *"might"* arise. *Id.* (emphasis added).[2] The letter, threat of suit for $2,000,000, and the attached complaint, taken in their entirety, were also "sufficiently serious" to satisfy the remainder of the *Walton* criteria. *Id.* Accordingly, upon receipt of the December 23, 2008 letter, Boyd was required under the terms of the policies to notify Nationwide "as soon as practicable" as a prerequisite to seeking coverage under the policies.

The final issue for determination is whether the period between December 23, 2008 and notice to the insurance company on March 23, 2009 was so unreasonable as to

---

[2] As mentioned above, Boyd appears to concede that the December 23, 2008 letter gave it notice of an intention by the Lucks to seek damages. Resp. to Summ. J. Mot. at 24 ("It was not until Christmas Eve 2008 that Boyd ever received any notice that the Lucks were planning to seek damages against Boyd.").

violate the policies' notice provision. As stated above, this determination is "usually a question [of fact] .... It is only when reasonable men should not differ as to the proper inferences deducible from the proven facts [that] the question can be decided as a matter of law." *Mason & Dixon*, 199 Va. at 225, 98 S.E.2d at 705. In this case, the parties disagree as to whether Plaintiff was prejudiced by the three-month delay before notice and disagree as to whether the three month delay was reasonable. Considering the length of the delay and the questions concerning whether Plaintiff was prejudiced by the delay, and viewing the facts in the light most favorable to Boyd, the Court finds that this is not a case where the Court can find that the delay was unreasonable as a matter of law. Consequently, there remains a genuine issue of material fact precluding summary judgment. *See* Fed. R. Civ. P. 56(c).

Accordingly, Plaintiff's Motion for Summary Judgment is denied.

### IV.

Turning to the merits of Plaintiff's claims, the parties have agreed to submit the evidence presented at the January 12, 2010 hearing as the evidence that would have been presented at a formal bench trial.

The remaining issue is whether the three-month period between December 23, 2008 and March 23, 2009 that it took Boyd to notify Nationwide was unreasonable and violated the policies' notice provision. As mentioned above, the question of whether notice was made "as soon as practicable" is a question of fact.

12

"Policy provisions that notice of accident be given as soon as practicable, and notice of claim or suit be forwarded immediately only require that insured act within reasonable time, considering all of the circumstances." *N. River Ins. Co. of N.Y. v. Gourdine*, 205 Va. 57, 62-63, 135 S.E.2d 120, 124 (1964).

One factor for the Court to consider is whether Nationwide was prejudiced by the delay. "[T]he insurer is not required to show that it has been prejudiced by the violation," but the fact-finder may consider prejudice in determining whether the delay in notice was unreasonable. *State Farm Fire and Cas. Co. v. Scott*, 236 Va. 116, 120, 372 S.E.2d 383, 385 (1988). As mentioned above, the parties dispute whether Nationwide was prejudiced. Nationwide argues that it was prejudiced because it did not have the opportunity to be involved in the discussions and mediation sessions prior to the filing of the complaint in state court. Nationwide contends that this was a critical juncture in limiting its potential liability. Boyd counters that there was no prejudice because Nationwide denied coverage on reasons other than notice, the mediation produced no resolution of the dispute, and the report prepared for the mediation is unlikely to be admitted in the state court case.

Prejudice is defined as "[d]amage or detriment to one's legal rights or claims." *Black's Law Dictionary* 1218 (8th Ed. 2004). Certainly, Boyd had a legal right to negotiate in an attempt to amicably settle the matter, but entering into these negotiations did not toll Boyd's duty to notify Nationwide. Further, by entering into negotiations with the Lucks, Boyd changed the posture of the dispute and potentially circumscribed

13

Nationwide's ability to negotiate with a clean slate by statements and offers made at negotiation. Boyd compares its actions to the typical situation when two motorists attempt to settle their differences following a car accident and, if negotiations are unsuccessful, file an insurance claim. The controversy at hand, however, involves hundreds of thousands of dollars in potential liability, complex legal issues, and protracted litigation. Delay in notifying the insurance carrier hindered its ability to investigate the claim and prepare for trial.

Prejudice alone, however, does not necessarily make *any* delay unreasonable but is instead considered as a factor in weighing the length of the delay. The Court finds that Nationwide was prejudiced by the delay in this case because it was unable to participate in the mediation where it could assist in settlement discussions and learn about the strength of the opposing party's case. The three-month delay must be viewed in light of this prejudice.

Boyd has submitted no extenuating circumstances for the three-month delay, which the Court, as fact-finder, could consider in determining the reasonableness of the delay. *See, e.g., Mason & Dixon*, 199 Va. 221, 225, 98 S.E.2d at 705. As stated above, Boyd's subjective belief that the policies would not be implicated by the December 23, 2008 letter is irrelevant. *See Dan River*, 227 Va. at 487, 317 S.E.2d at 487. Defendant argues that the Court should follow Judge Morgan's decision in *Penn-America Insurance Co. v. Mapp*, 461 F. Supp. 2d 442 (E.D. Va. 2006), where the insurer was notified of the

claim two days after service of the complaint but more than two years after the incident. *Id.* at 447. In *Mapp*, however, the court found that under the facts presented, there was no objective notice of a possible claim prior to being served with the state lawsuit, and the insured provided notice two days after service. *Id.* at 447, 454. The circumstances giving rise to the underlying lawsuit, standing alone, did not provide the insured a reasonable belief that a suit might be filed. *Id.*[3] The immediate case presents a very different set of facts. In this Court's view, a reasonable person would be on notice of a possible claim in December 2008, three months prior to Boyd's notification to Nationwide. Why else would Boyd participate in mediation?

The Court finds that: the receipt of the December 23, 2008 letter and the attached draft complaint was sufficiently definite to put Boyd on notice of a potential claim for damages; Boyd's mediation with the Lucks prior to notifying Nationwide prejudiced Nationwide; and there were no extenuating circumstances justifying the delay. The Court further finds that Boyd's three-month delay in notifying Nationwide was unreasonable and in violation of the policies' requirement that notice be made "as soon as practicable." Because Boyd failed to comply with the terms of the policies, the insurance policies do not provide coverage for any liability found in the Chesterfield County lawsuit. Accordingly, the Court finds that Nationwide has no duty to defend or duty to indemnify

---

[3]In *Mapp*, an intoxicated patron of the defendant's business struck a pedestrian while exiting the parking lot. Under prevailing state law, a business has no liability for the off-premises negligent acts of persons served alcohol on its premises. *Id.* at 445-47.

Boyd in the underlying Chesterfield County matter.

Boyd filed a counterclaim on May 13, 2008 seeking declaratory judgment that Nationwide has a duty to defend and indemnify Boyd in the underlying suit. This counterclaim presents the same issues and question as Nationwide's initial complaint. As to the counterclaim, the Court reaches the same conclusions as stated in this opinion regarding the initial complaint.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Jan. 25, 2010
Richmond, VA